UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

PAUL NASEMAN,

        Plaintiff,

Case No. 1:19-cv-460

v.

Honorable Janet T. Neff

DOOHAK KIM et al.,

        Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

    **I.**    **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the St. Louis Correctional Facility (SLF) in St. Louis, Gratiot County, Michigan. The events about which he complains occurred at that facility, as well as at the Bellamy Creek

Correctional Facility (IBC) and the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan, and the Gus Harrison Correctional Facility (ARF) in Adrian, Lenawee County, Michigan.

Plaintiff sues Dentists Dr. Doohak Kim, Dr. Unknown Choi, Dr. Unknown Sanders, E. Cook, and Dr. Unknown Hardy. Plaintiff also sues IBC Warden Unknown Trierweiler, ICF Warden Unknown Stewart, ARF Warden Unknown Campbell, SLF Warden Unknown Vashaw, and MDOC Director Heidi E. Washington.

Plaintiff alleges that in 2017, Defendant Kim, who was the dentist at IBC, gave Plaintiff no choice but to have all his teeth pulled and to get dentures. Defendant Kim made impressions of Plaintiff's mouth and created a wax mold. Plaintiff complains that the mold showed a huge under bite, which did not accurately reflect the condition of Plaintiff's mouth. Thereafter, Defendant Kim added approximately 0.25 inch of wax to the upper plate so that the upper teeth would match the under bite. Plaintiff states that this caused both the upper and the lower dentures to be incorrect. The upper was realigned, and Plaintiff was forced to take the upper and the unfitted lower back to his cell. The lower portion of Plaintiff's dentures broke because it did not fit properly.

Plaintiff saw Defendant Choi at IBC. Defendant Choi agreed that Plaintiff's dentures did not fit properly and ordered that the lower portion be fixed and that new impressions be made. Plaintiff was then transferred to ICF. Defendant Sanders received Plaintiff's repaired dentures and attempted to give them to Plaintiff unfitted. However, Plaintiff refused to take them because they were unusable. After talking with Plaintiff, Defendant Sanders agreed that the dentures were misshapen and too wide for Plaintiff's mouth. Defendant Sanders stated that he would have them remade. However, Plaintiff was moved to ARF shortly thereafter.

Once at ARF, Defendant Hardy attempted to give Plaintiff his unfitted dentures. The lower dentures had a lump in the area that had been repaired and needed to be aligned. Defendant Hardy refused to align the dentures, which were unusable, so Plaintiff refused to take them. Plaintiff filed grievances and sought assistance from the wardens at each of the facilities in which he was confined. However, each time Plaintiff asked for assistance, he was told that dentures had been made for him and he could not have new ones for five years. No one ever addressed the fact that the dentures did not fit.

After being moved to SLF again, Plaintiff had the prison find his dentures because his prison time was almost done. The SLF dentist stated that she would never have made dentures that looked like that, and that Plaintiff's dentures were only for looks and not meant to be used for eating. Plaintiff states that he has been without dentures for two years and could not eat solid food, which has caused him to lose thirty pounds.

Plaintiff claims that Defendants' conduct violated his rights under the Eighth Amendment. Plaintiff seeks damages.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Respondeat Superior

Plaintiff fails to make specific factual allegations against Defendants Trierweiler, Stewart, Campbell, Vashaw, Cook, and Washington, other than his claim that they failed to conduct an investigation in response to his grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436

4

U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Trierweiler, Stewart, Campbell, Vashaw, Cook, and Washington engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

### IV. Eighth Amendment

Plaintiff contends that the failure to provide him with properly fitting dentures constituted cruel and unusual punishment under the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective

5

component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state

6

> a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

7

According to the July 13, 2018, step I grievance response to ARF-18-06-1588-12A:

> Fabrication of dentures began 9/13/17. According to dental record, at the try-in stage on 10/19/17, offender refused set-up due to appearance even though teeth were set due to [Plaintiff's] Class III jaw relation. Set-up was returned to lab and teeth were reset. On 11/22/17, offender was scheduled for second try-in and accepted set-up. Denture set-up was returned to lab for processing and was delivered with reline on 2/5/2018. Offender accepted delivery of dentures.
>
> Offender presented on 2/23/18 with broken mandibular denture (record stated offender was eating pizza). Mandibular denture was returned to lab for repair along with maxillary denture for polishing. Offender was scheduled on 4/16/2018 and 5/17/2018 for delivery, but refused to accept maxillary and mandibular dentures because the teeth were set-up incorrectly and wanted new dentures.

(ECF No. 1-1, PageID.14.)

Plaintiff filed an appeal of the grievance denial, asserting that he had no choice in the set-up and was told to take the dentures as they were. Plaintiff stated that he refused to take them because they did not fit at all and were unusable. Plaintiff indicated that he was seeking new upper dentures and a refit of the lower dentures. (*Id.* at PageID.15.)

In the step II response, dated August 7, 2018, the respondent Subrina Aiken, R.N., stated:

> After careful consideration your appeal has been denied and the Step I decision is upheld. Mr. Naseman, the Dental department staff has been trying to work with you regarding your complaint; however you are very closed minded about what you want done, even though they are the dental professionals and are trying to help you. You have a class III occlusion, which means you have an "under-bite," when the dentures are made, they are made as your teeth were to fit your gums, the class III occlusion will not change with dentures. When you are ready to work with the staff to meet your needs, please submit a Health Care Request (HCR) for evaluation. Grievance denied at this time.
>
> If you are having issues with sores in your mouth, please kite for evaluation and if you are having difficulty chewing your food, you can request a "soft" diet, just let them know that you are chewing with your gums.
>
> Grievant has and will continue to receive all necessary dental/medical treatment. Grievant is encouraged to access health care through the kite process to address any current health care concerns and to constructively discuss his concerns with Health Care Staff at scheduled appointments.

8

(*Id.* at PageID.17.)

In *Davis v. Powell*, 110 F. App'x 660 (6th Cir. 2004), the Sixth Circuit granted summary judgment de novo, noting that based on the plaintiff's dental records, it was clear that the defendant dentist, Dr. Corsi, had seen the plaintiff at least six times during the six month period that plaintiff was under Dr. Corsi's care. *Id.* at **2. The Court stated:

> The record in this case reflects that Davis [the plaintiff] was under the care of Dr. Corsi for less than six months and was examined and treated by Dr. Corsi during that time. While Davis complained to Dr. Corsi that his gums were sore and bleeding, in his affidavit, Dr. Corsi stated that when he examined Davis, there was no evidence of pain or bleeding and stated that Davis had adequate dentition to function. The record also reflects that, while under the care of Dr. Shields, Davis was examined and treated no less than six times between September of 2001 and December of 2002 and was transferred to another prison shortly thereafter. Additionally, in his affidavit, Dr. Shields stated that he made "negative findings of bleeding or abraded gums due to the absence of partial dentures." Furthermore, Davis required extensive dental work prior to receiving any new partial dentures, which Dr. Shields actively performed while Davis was under his care. Based on the foregoing, it is clear that Davis received substantial dental treatment while under the care of Dr. Corsi and Dr. Shields wherein they determined that he was not in need of emergency partial dentures. As Davis has failed to provide this court with any medical evidence to dispute this diagnosis, we will not second-guess Dr. Corsi and Dr. Shields regarding the adequacy of their treatment. Additionally, the officials are not liable under § 1983 for supervising the dentists or for denying Davis's grievances as we have determined that Dr. Corsi and Dr. Shields were not deliberately indifferent to Davis's dental needs.

*Id.*

Unlike in *Davis v. Powell*, 110 F. App'x 660, where the case was before the court on a motion for summary judgment, Plaintiff here has not had any opportunity for discovery. Nor does the Court have access to Plaintiff's dental records. Therefore, the Court is limited to the allegations and attachments to Plaintiff's complaint. According to Plaintiff's complaint and the accompanying attachments, IBC dentist Defendant Kim did the initial impression and mold for dentures, and had them made. Although Plaintiff states that the dentures did not fit him, he fails to allege any facts showing that Defendant Kim acted with the intent to deprive him of properly

9

fitting dentures. Because Plaintiff's allegations against Defendant Kim are insufficient to support a finding of deliberate indifference, Defendant Kim is properly dismissed.

Plaintiff alleges that Defendant Choi saw him after his lower dentures broke and agreed that they did not fit Plaintiff. Defendant Choi ordered that the lower portion of Plaintiff's dentures be fixed and that new impressions be made for the upper portion. Before this could be accomplished Plaintiff was transferred to ICF. Because Defendant Choi's only conduct was to attempt to provide Plaintiff with usable dentures, Plaintiff fails to state an Eighth Amendment claim against Defendant Choi.

Plaintiff alleges that Defendant Sanders received Plaintiff's dentures at IBC, which included his repaired lower dentures, and attempted to give them to Plaintiff. However, Plaintiff refused to take them because they were unusable. At this point, Defendant Sanders agreed with Plaintiff, noting that the dentures were misshapen and too wide for Plaintiff's mouth. Therefore, Defendant Sanders stated that he would have them remade. Plaintiff was moved to ARF a short time later. Plaintiff's allegations against Defendant Sanders show that he acted on Plaintiff's behalf in an attempt to obtain usable dentures for Plaintiff. Therefore, Defendant Sanders is properly dismissed from this action.

The Court notes that although the deprivation of usable dentures for an extended period of time may support an Eighth Amendment claim in some circumstances, none of the allegations in Plaintiff's complaint show that any of the named Defendants acted with deliberate indifference to his medical needs. Therefore, Plaintiff's complaint is properly dismissed.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). The Court does not certify that an appeal would not be in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   September 23, 2019                    /s/ Janet T. Neff
                                                                Janet T. Neff
                                                                United States District Judge